Nott, J.,
delivered the opinion of the court:
Between October 1, 1862, and November 16,1867, the Louisville and Nashville Railroad Company made certain returns to the Commissioner of Internal Revenue under the Act 30th June, 1864 (13 Stat. L., p. 223), showing the dividends declared and “profits over dividend declared” which had been made by the company. The following is one of these returns:

*30 Opinion of tlic court.
The tax withheld by the company on the “ dividends declared” has been refunded to the claimant under the following statute, and is not now a subject of controversy:
'‘AN ACT for tlie benefit of the State of Kentucky, Logan and Simpson counties and of Louisville, Kentucky, and of Sumner and Davidson counties, Tennessee.
"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the Commissioner of In ternalEevenue, wi th the approval of the Secretary of the Treasury, be, and he is hereby, authorized and required to audit and adjust the claims of the sinking fund commissioners of the State of Kentucky, of Logan and Simpson counties in said State, of the city of Louisville, Kentucky, and of Sumner and Davidson counties, Tennessee, for internal-revenue taxes collected on railroad dividends on stock and on interest on railroad bonds owned by said counties and city, respectively, in the Louisville and Kashville Bailroad Company and of said State for internal-revenue taxes collected, and interest on railroad bonds of the railroad from Louisville to Lexington and on dividends on stock of said railroads owned by said State, and due and payable to said boards of sinking fund commissioners, respectively, and to said State, counties, and city, to the extent that such taxes were deducted from any dividends or interest due and payable to such boards, respectively, and which have not been heretofore refunded, and for this purpose, any statute of limitations to the contrary notwithstanding, sections nine hundred and eighty-nine, thirty-two hundred and twenty, thirty two hundred and twenty-six, thirty-two hundred and twenty-seven, and thirty-two hundred and twenty-eight of the United States Be vised Statutes are hereby made applicable and available with the force and effect as if protest and demand for payment had been made within the time prescribed by said sections; and the amounts, when ascertained as aforesaid, and not heretofore refunded shall be paid out of the permanent annual appropriation provided for similar claims allowed within the present fiscal year.
“Approved February 25,1893 (27 Stat. L., p. 477).”
Under this act of 1893 an award was made by the Commissioner of Internal Bevenue and approved by the Secretary of the Treasury, first, of the claimant’s proportional part of the tax paid on cash dividends; second, of the claimant’s proportional part in the profits over dividends upon which the company had paid a tax. The Comptroller of the Treasury allowed the former, and it has been paid and is no longer a subject of controversy; he rejected the latter, and it forms the subject, directly or. indirectly, of the present suit.
*31 An action will lie upon an award of the Commissioner of Internal Revenue, and it can be attacked only for fraud, mistake, or want of jurisdiction. The statute under which the Commissioner acted, this act of 1893, authorizes and requires him to audit and adjust the claim for “internal-revenue taxes collected on railroad dividends on stock, and on interest,” “ to the extent that such tax was deducted from any dividends or interest due and payable to such boards, respectively.” The question then is, Was the Commissioner of Internal Revenue authorized to make this refund of a tax on moneys which were profits, but which were never distributed or paid over to the shareholders as dividends? Or, stated differently, Were these taxes deducted “from any dividend or interest due and payable to such boards ? ”
The distribution upon which the Commissioner of Internal Revenue acted, and which is now relied upon to uphold his action, was a stock dividend ordered by the directors of the company November 16th, 1867:
“Resolved, That an increase of the stock of forty per cent be made, the same to be distributed among the owners of stock in proportion to the amounts owned by them at the next closing of the books for the transfer of stock, by certificates of stock to be issued by the company for whole and fractional shares, as the same may be due to each,” etc.
No deduction of the tax from the scrip dividends of the claimant was ever made in terms. If there was a deduction, it is merely inferable from these facts: (1) That a payment of the tax diminished the amount of the profits of the company; (2) that a stock dividend may be assumed to represent profits not distributed in dividends; (3) that the claimant would have received more stock if the profits had not been diminished by the payment of a tax from which a municipal corporation was exempt, it being, under the decision of the Supreme Court in the case of The United States v. Baltimore and Ohio Railroad (17 Wall. R., 322) “a portion of the sovereign power of a State.”
Here it should be premised that the act of 1893 is simply remedial. It does not create a claim or declare a right. All that it does, or assumes to do, is to relieve the claim from the bar of a statute of limitations. It does not empower the Commissioner to refund money which he could not have refunded if the claimant had applied to him in due time and the act of *32 1893 bad never been passed. The exemption of the claimant and the right to a refund must be determined by the act of 1864,. under authority of which the tax was imposed and, legally or illegally, collected.
The act of 1864 provides (§ 122) that “ any railroad” that may declare “ any dividend in scrip, or money due or payable to its stockholders, as part of the earnings, profits, income, or gains of such company, and all profits of such company carried to the account of any fund, or used for construction, shall be subject to and pay a duty of five per centum on the amount of all such interest, or coupons, dividends, or profits, whenever the same shall he payable; and said companies are hereby authorized to deduct and withhold from all payments, on account of any interest, or coupons and dividends due and, payable as aforesaid, the duty of five per centum.” The act of 1893 uses substantially the same language — “taxes deducted from any dividends or interest due and payable” — and manifestly refers to the same thing. That is to say, the thing referred to by the act of 1893 is the tax deducted and withheld from a dividend due and payable as prescribed and authorized by the act of 1864. What right, then, had the claimant under the act of 1864 to a refund of the 5 per cent tax paid on profits which were not distributed as dividends, but retained by the company for its own corporate purposes'?
The law of corporations knows no owner of corporate property save the company. No. individual or body, corporate or political, can, as a shareholder, set up a personal immunity or privilege and say that it holds stock in a company on other terms and conditions than other shareholders, and ask recognition in law for its exceptional property rights. When a man or a community or a body politic voluntarily enters a corporation and becomes a stockholder he gains the advantage of nonpersonal liability, and in consideration thereof surrenders control and ownership of the money which he so invests. It is no longer his; it has become the property of the corporation. How the corporation may use it or what it may pay him back is his concern, or a question between him and it. The rest of the world knows him not as a fractional part of the corporate whole, and deals only with the legal entity of the corporate body. To undistributed, unapportioned money which is not his and which is the corporation’s he can assert no right, constitutional, legal, or natural.
*33 The act of 1864 (§§ 120, 122) recognized, this principle of corporations. The purpose of the statute was to impose a tax on all dividends derived from all corporate bodies in the United States, whether the stock was owned by men, women, or children, by citizens or aliens, by residents or nonresidents; and the policy of the act was to make the corporate bodies collect and pay over the tax. When a dividend was declared, the money which had been the corporation’s became the several shareholders’, and the company, eo instanti, became the agent or instrumentality of the Government to collect the tax.
Did the money, termed “profits over dividends declared” in the tax return and “profits of such companies carried to the account of any funds or used for construction” in the statute, ever pass to the individual shareholders and become their property, subject to their personal liabilities on the one hand, and entitled to their personal immunities on the other? It remained in the hands of the company and was applied to its business purposes — to improving, increasing, and augmenting the corporate property. It might have been distributed as dividends, but was not. Equitably and morally it may have been the property of the shareholders, and they might have been entitled to receive it, but they elected through their representatives, the directors, to reinvest it in an enlargement of their corporate property, and the reinvestment was as much their act as if they had voluntarily, each and all, paid in the money. In time they elected to issue to themselves evidences of their augmented capital, and these evidences came in the form of stock dividends. In bodies corporate, as in bodies politic, the majority rules, and rules through representatives, and the acts of the majority are the acts of all. If originally the shareholders in this railroad comj>any had elected not to enlarge their business and increase their capital, but to distribute among themselves all of the profits which the company had made, some of them would have received their dividends after the payment of the tax, and some would have received it, or would have been entitled to receive it, without the deduction of the tax; but the latter can not now say that they should recover a proportional part of a corporate tax for the reason that it was imposed upon profits, and that if their share of such profits had been paid over to them they would not have been liable to pay a tax upon it. The distinction *34 between tbe two cases of dividends and profits is this, that in the one the shareholder became the owner of the money and was then illegally taxed upon it; in the other, the shareholder was not the owner of the money and the tax imposed upon it was legally imposed and properly paid by the company.
The committees of Congress that reported and recommended the passage of the bill have said in their reports that the only question before them was, “ Whether the municipalities named in this bill should be relieved from the bar of the statutes of limitations;” and the ground of the appeal to Congress was that these municipalities were ignorant of the fact that a tax had been deducted from their dividends, and of the law as subsequently declared by the Supreme Court in United States v. Railroad Company (17 Wallace, 322). But if the municipalities' had known of the payment of the tax on these reserved profits or "undistributed sums,” and of the law as subsequently declared by the Supreme Court, of what would it availed them ? They could not have asked for a refund at the time when the tax was paid, because the profits had not been turned into a dividend by the company, but had been retained by a corporate body for corporate purposes. They could not have asked for a refund in 1867, when the stock dividend was issued, because more than two years had elapsed since the payment of the tax, and no tax was then paid on the scrip dividend. Furthermore, had there been no statute of limitations, the Commissioner of Internal Be venue could not in 1865, or in 1867, have made a refund, for the money was legally collected when the tax was paid, and the tax could not have been invalidated, in whole or in part, by an act of the company done long after the collection. Neither could the Commissioner have held that the distribution of a stock dividend in 1867 was in legal effect the distribution of a cash dividend in 1865. If these municipalities, by reason of their exemption from Federal taxation, are entitled to a refund of their ju’oportioual part of this corporate tax merely because the money might have been distributed in dividends when it was not, they are entitled to a refund of their proportional part of every Federal tax which was paid by the company; for every tax was paid out of profits, and lessened profits, and to that extent diminished the dividends which the municipalities might have received.
A natural person holding stock in a corporation can not say *35 on one day, “ I am only a stockholder and am exempt from personal responsibility for tbe corporate acts of the company,” and on another day, “ I am part owner of the corporate property, and entitled to have my proportional part recognized'and treated as if it were my specific property.” Bodies politic stand upon no different footing when they buy and sell in the marts of commerce or become investors in corporate property. They can not say to-day, “We have assumed no liability on behalf of this company save such as is common to our fellow-shareholders,” and to-morrow, “Our immunity from taxation demands that our proportional part of the corporate property be expempt from taxation also; and if it be ascertained and segregated and set over to ns at any time by the act of the corporation, we can retroactively go back and demand a refund of our proportional part of a tax which was paid when our proportional part of the thing taxed was the property of the corporation.” The crucial question in this case is, Who was the owner of the property tvhen the tax was collected? and the controlling fact in the case is that the undistributed, profits of the company were not the property of the claimant when the tax on them was paid. It was not the claimants’ property that was taxed; and there is. no law which authorizes a refund to one person of a tax imposed on another person’s property, or which authorizes the refund of a tax which was legally imposed and collectible when it was paid.
The judgment of the court is that the petition of the claimants be dismissed.